IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CANDACE WRIGHT, CHASE**
**MCNEAL, and PATRICK ISOM**                                                **PLAINTIFFS**

v.                                        CIVIL ACTION NO.: 3:20-CV-331-MPM-JMV

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security**                                  **DEFENDANT**

**FINAL JUDGMENT**

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of a December 20, 2019, final decision of the Commissioner of the Social Security Administration (the "Commissioner") finding that the Plaintiff was not disabled. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] For the following reasons, the Commissioner's decision is affirmed.

Plaintiff protectively filed an application in the present matter on January 26, 2015. The application was denied at the initial and reconsideration levels and the Plaintiff filed a timely request for hearing. The Administrative Law Judge (the "ALJ") issued a Partially Favorable Decision in this cause on August 1, 2018. Tr. 182. The Appeals Council issued an Order dated March 29, 2019, which remanded the ALJ's Partially Favorable Decision. Tr. 206. Subsequent

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

thereto, the ALJ held a second hearing and rendered an Unfavorable decision on December 20, 2019, on behalf of the Plaintiff, whose amended onset date was April 1, 2017. Tr. 30. The Appeals Council affirmed the second Unfavorable Decision of the Plaintiff on October 22, 2020.

The Plaintiff raises two issues on appeal: (1) Did the ALJ err by failing to incorporate all of Plaintiff's visual impairment restrictions into the RFC?; and (2) Did the ALJ err in her assessment of Plaintiff's treating physician and the medical records?

With respect to the Plaintiff's visual impairments, the ALJ stated in her decision:

> In March 2019, the claimant underwent cataract surgery according to a chart note from Mid-South Nephrology Consultants ("MCNC"). Dr. Deogaygay documented this in later March 2019 (Exhibit 20F). The record includes undated pre-operative and post-operative instructions from DeSoto Eyecare, Inc. (Exhibit C18F). The instructions direct follow-up (Id.)). However, the operative note is not a part of the record (F Section, "Medical Evidence of Records"). . . . As noted, the claimant reported in December 2015 that she underwent unsuccessful right eye surgery five years earlier (Exhibit C4F). In 2012, she worked as a security guard she in 2012 and as a tray worker/server in 2014 (See, e.g., Exhibit 3CE). This is significant for the occupation of security guard requires, inter alia, occasional near visual acuity, frequent far visual acuity, occasional depth perception, occasional accommodation (i.e., "Adjustment of lens of eye to bring object into sharp focus"), and frequent field of vision. The duties of tray worker/server entail frequent near acuity, and occasional depth perception, accommodation, and field of vision. The performance of these jobs after unsuccessful right eye surgery suggests the claimant has adapted well. The undersigned finds that the CVA history and visual disturbances impose no more than mild functional limitations. Accordingly, these impairments are non-severe. Tr. 40-41. (internal footnotes omitted).

The Plaintiff argues the ALJ erred in referencing only a remote work history at a time when the Plaintiff was not as limited with her vision as she was later. Plaintiff also asserts in this regard, that the ALJ failed to rely on more recent treatment records that confirm her limited ability to see. This, according to the Plaintiff, creates a decision that is not supported by substantial evidence. In

particular, the Plaintiff notes the following evidence from the record to refute the ALJ's assessment that her vison impairments are non-severe and need not have been accounted for in the RFC:

- January 21, 2016; When the physician was asked to answer a question regarding the Plaintiff's use or binocular vision in all directions? The statement opined that the Plaintiff did not have useful binocular vision in all directions with glasses for distanced and near vision. Tr. 690. The statement also opined that she had a poor prognosis and decreased depth perception. Tr. 691. She does not have useful binocular vision. Anterior segment exam of both eyes showed moderate nuclear sclerotic changes of the lens. Tr. 697. The right eye is stable and permanent. The cataracts can be progressive. Prognosis is poor for the right eye, as there is not treatment. She may have some decreased depth perception. We performed a Goldmann Visual Field on a III4e setting and her fields were restricted. Visual efficiency in the right eye was 43% and in the left eye was 54%. Tr. 697.
- May 3, 2016; LT: Chief complaint: The patient reports they have blurry vision. Location: It affects vision at all distances. The symptoms have worsened. Duration: The symptoms are constant in duration. Onset: It started 4 or more months ago. Context: The symptoms are present or worsen when wearing contacts. Modifying factors: patient has not found anything to relieve symptoms. Tr. 723.
- June 6, 2016; The patient reports they have blurred vision. Location: It affects vision at all distances. Quality: The symptoms have worsened. Duration: The symptoms are constant in duration. Tr. 727.
- June 5, 2017; She came in with her walker, and her balance is poor since her stroke of 2015. She also has a scotoma in her right eye and can see nothing with that eye. Tr. 874.
- November 28, 2017; Visual-spatial impairment: As a result of her old stroke with ataxia in the central scotom a with visual-spatial impairment, it is my estimation that she'll have impossibility maintaining any type of gainful employment. She is doing well to function independently at this point in time. Tr. 748.
- February 7, 2018; Ms. Mcneal reports that her cataract in her left eye is bothering her and causing her vision to be blurred. Mcnceals says she can't go to an eye doctor as of now because she doesn't have insurance right now. Tr. 865.
- July 29, 2019; She is status post cataract surgery (3/2019) and R eye surgery to correct damage due to occular histoplasnecrosis. Tr. 928.

- February 12, 2020; Notes pertaining to completed eye surgery. Tr. 9.

According to the Plaintiff, the aforementioned citations demonstrate the severity of the Plaintiff's visual impairment and prejudice is established by the ALJ's failure to account for it in the Plaintiff's RFC.

The court is not persuaded. As the Commissioner points out, Plaintiff's left eye cataract was noted by her physician in 2016 not to warrant cataract surgery as her functional vision had not yet worsened. The CDIU investigation that year confirmed that plaintiff in fact was active in her neighborhood on an unassisted and daily basis – walking her dog for example twice a day and lifting and carrying him as well. In 2017, she was also noted to function independently. And, given that corrective cataract surgery to the left eye was apparently done in early 2019 – and another corrective surgery to the right eye was also performed then – there is substantial evidence to support the RFC and that it allowed her to perform her PRW as a security guard and tray worker/server. Tr. 51. Plaintiff retained the burden of proving that she could not perform her PRW. *See Bowen v. Yuckert*, 482 U.S. 1378, 142 (1987); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). As such, the Plaintiff did not satisfy her burden.

As to the second issue, the Plaintiff argues that in the ALJ's assessment of Plaintiff's treating physicians, he failed to consider all of the *Newton*[2] factors or any relevant medical evidence. As for relevant evidence, the Plaintiff asserts that the ALJ did not consider Dr. Eldred's records for September 3, 2015, Tr. 709; March 8, 2016, Tr. 705; August 18, 2016, Tr. 764; and December 27, 2016, Tr. 760; nor Dr. Allen's treatment notes on June 5, 2017, Tr. 874; August 29, 2017, Tr. 871; October 5, 2017, Tr. 869; November 28, 2017, Tr. 748; February 7, 2018, Tr. 865.

---

[2] *See Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

As for *Newton*, the Plaintiff argues "[t]he failure to consider every one of the Newton factors creates a decision that was issued without the benefit of proper legal standards. The ALJ's failure to even consider the Newton factors prejudiced Plaintiff." Pl. Br. at 8.

In response, the Commissioner points out persuasively that a review of the ALJ's discussion refutes Plaintiff's claim that she did not consider the *Newton* factors or any relevant medical evidence. The ALJ considered for example, in rejecting Dr. Eldred's comments related to walking, that during the relevant period, Dr. Allen, a treating physician, observed in August 2017 and February 2018 that Plaintiff had a normal gait. Tr. 45, 46, 878 (full range of motion, normal gait), 884 (full range of motion, normal gait), and an ALJ need not apply the *Newton* factors if there is reliable evidence from another treating or examining physician. *Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). The ALJ also addressed Plaintiff's May 2019 motor vehicle accident, noting that by September 16, 2019, Dr. Timothy Krahn also documented a normal gait. Tr. 44, 958. The ALJ further cited the doctor's opinion that as best he could tell, Plaintiff "was basically nearly weight-bearing from day one." Tr. 44, 959. The ALJ pointed out that there was no indication that Plaintiff "ambulated with a walker during her visits with Dr. Krahn." Tr. 44, 951-62. These objective findings that Plaintiff had a normal gait support the ALJ's decision to reject Dr. Eldred's remarks, made well in advance of the onset date.

An ALJ may reject all or portions of any physician's opinion when the overall evidence supports a contrary conclusion. See *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Newton*, 209 F.3d at 455. When good cause is shown, an ALJ may give less weight, little weight, or even no weight to any physician's opinion. See *Perez v. Barnhart*, 415 F.3d 457, 465- 66 (5th Cir. 2005); 20 C.F.R. § 404.1527(c)(4) (ALJ may consider inconsistency in discounting a medical source's opinion). The ALJ found Dr. Eldred's comment on the handicap parking application was

inconsistent with the other contemporaneous evidence, his own later findings on exam, and other relevant objective medical observations on exam by treating and examining physicians finding Plaintiff had a normal gait. An ALJ must apply the *Newton* factors only if there is no other reliable medical evidence from another treating or examining physician. *See Newton*, 209 F.3d at 455-57. The Fifth Circuit has held that the ALJ does not have to specifically discuss all evidence that supports the decision or all the evidence that was rejected. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994); *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001). The ALJ weighs the medical opinion evidence, not Plaintiff or the Court. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). As such, substantial evidence supports the Acting Commissioner's decision.

For the foregoing reasons, the Commissioner's decision is affirmed.

**SO ORDERED**, this the 16th day of December, 2021.

*/s/* Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**